IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DEAN KRAKAUER and ROBBIN KRAKAUER, | ) Civ. No. 09-00518 ACK-BMK |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK, FSB, A FEDERAL SAVINGS BANK; ONEWEST BANK, FSB; DOES 1-20, | ) |
| Defendants. | ) |
| INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK, FSB, A FEDERAL SAVINGS BANK; ONEWEST BANK, FSB, | ) |
| | ) |
| Counterclaimants, | ) |
| | ) |
| v. | ) |
| | ) |
| DEAN KRAKAUER and ROBBIN KRAKAUER, | ) |
| | ) |
| Counterclaim Defendants. | ) |

ORDER GRANTING DEFENDANTS/COUNTERCLAIMANTS' MOTION FOR SUMMARY JUDGMENT

PROCEDURAL BACKGROUND

On October 27, 2009, Dean Krakauer and Robbin Krakauer (collectively, "Plaintiffs") filed a complaint ("Complaint") in this Court against IndyMac Mortgage Services and OneWest Bank, FSB ("OneWest," and collectively, "Defendants").  Doc. No. 1.

Plaintiffs were represented by counsel at that time.  On December 28, 2009, Defendants filed an answer to the Complaint as well as a counterclaim ("Counterclaim") against Plaintiffs.  Doc. No. 5.

Plaintiffs discharged their counsel on March 30, 2010.  Doc. No. 15.  Proceeding pro se, Plaintiffs filed a first amended complaint ("FAC") on July 30, 2010.  Doc. No. 43.  Defendants filed an answer to the FAC on August 11, 2010.  Doc. No. 45.

On August 23, 2010, Defendants filed a motion for summary judgment as to both the FAC and the Counterclaim ("Motion").  Doc. No. 46.  This motion was supported by a separate concise statement of facts ("CSF") and a number of exhibits.  Doc. Nos. 47, 54.  Plaintiffs filed memoranda in opposition to the Motion on September 28, 2010 ("Opp'n 1") and October 28, 2010 ("Opp'n 2").  Doc. Nos. 53, 55.  These memoranda were supported by numerous exhibits.[1/]  On November 30, 2010,

---

[1/] The Court deems admitted all of the material facts set forth in Defendants' concise statement of facts because Plaintiffs have not controverted those facts through a separate concise statement.  See D. Haw. Local Rule 56.1(g) ("[T]he moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the opposing party."); Reply at 3-4; see also King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants.").  In any event, Plaintiffs' exhibits, which the court has considered, do not otherwise controvert Defendants' concise statement of facts.

The Court notes that Plaintiffs violated the Local Rules by attaching exhibits to their opposition memoranda.  See D. Haw. Local Rule 56.1(b) ("Any party who opposes [a motion for summary judgment] shall file and serve with his or her opposing papers a separate document containing a single concise statement (continued...)

Defendants filed an untimely reply memorandum in support of their Motion ("Reply").  Doc. No. 56.[2]  On the morning of December 13, 2010, one hour before the hearing in this matter, Plaintiffs submitted to the Court, but not Defendants, a reply memorandum to Defendants' concise statement of facts.  Doc. No. 58.[3]  The Court held a hearing on the Motion on December 13, 2010.[4]

## FACTUAL BACKGROUND

In August 2002 Plaintiffs bought a vacant lot located at 71-1620 Puulani Place, Kailua-Kona, Hawai'i, 96740

---

[1] (...continued) that admits or disputes the facts set forth in the moving party's concise statement . . . ." (emphasis added)) and 56.1(h) ("[E]xhibits . . . shall only be attached to the concise statement.").

[2] Defendants' Reply was due by November 29, 2010.  See D. Haw. Local Rule 7.4 (providing that a reply in support of a motion set for hearing must be served and filed "not less than fourteen (14) days prior to the date of hearing" and that "[a]ny opposition or reply that is untimely filed may be disregarded by the court or stricken from the record").  Although the Court will accept the Reply, which was one day late, it emphasizes that "[f]ailure to comply with the Local Rules is unfair to the opposing side and the Court and impedes the efficient administration of justice."  Barber v. Chatham, 939 F. Supp. 782, 784 n.3 (D. Haw. 1996).

[3] In ruling on the instant motion, it is unnecessary for the Court to consider Plaintiffs' untimely, unserved, and improperly submitted supplemental memorandum.  Moreover, even if the Court were to consider this memorandum, the Court would still find that Defendants are entitled to summary judgment.

[4] For Plaintiffs' peace of mind, the Court notes that, as do all United States District Court judges, the Court has taken an oath to support and defend the Constitution of the United States.

("Property").  CSF Ex. G at 4, Ex. M.  On March 31, 2006, in

order to build a home on the Property, Plaintiffs executed and

delivered a promissory note ("Note") in favor of IndyMac Bank,

FSB ("IndyMac"), in the amount of $546,000.  CSF ¶ 1; Hoffman

Decl. ¶ 2; CSF Ex. A, Ex. F, Ex. G at 7.  To secure payment on

the Note, Plaintiffs on the same day executed a mortgage

encumbering the Property in favor of IndyMac ("Mortgage").  CSF

¶ 2; Hoffman Decl. ¶ 3; CSF Ex. B.  The Mortgage was recorded on

April 7, 2006, in the Bureau of Conveyances of the State of

Hawai'i ("Bureau") as Document No. 2006-065052.  CSF ¶ 2; Hoffman

Decl. ¶ 3; CSF Ex. B.  The Mortgage was subsequently assigned to

Defendant OneWest.  CSF ¶ 3; Hoffman Decl. ¶ 4; CSF Ex. C.[5]

     In June 2008, Plaintiffs completed building a two-

---

[5] It is unclear when exactly IndyMac assigned its interest
in the Mortgage to OneWest.  The Mortgage may have been assigned
as early as March 19, 2009.  "On July 11, 2008, IndyMac was
closed by the Office of Thrift Supervision (OTS) and the FDIC was
named Conservator.  On March 19, 2009, the FDIC completed the
sale of IndyMac to OneWest, a newly formed federal savings bank
organized by IMB HoldCo LLC.  All deposits of IndyMac were
transferred to OneWest."  Nicholson v. OneWest Bank, Civ. No.
1:10-CV-0795-JEC/AJB, 2010 WL 2732325, at *4 n.2 (N.D. Ga. Apr.
20, 2010) (citing FDIC Failed Bank Information,
http://www.fdic.gov/bank/individual/failed/IndyMac.html (last
visited Apr. 20, 2010)); see also Opp'n 1 at 3-5; Opp'n 1 Exs. E,
EA, EB (Loan Sale Agreement by and between FDIC as Receiver for
IndyMac Federal Bank, FSB, and OneWest, dated March 19, 2009).
According to the Counterclaim, assignment of the Mortgage was
"executed but still unrecorded" as of December 28, 2009.
Counterclaim ¶ 4.  The assignment was recorded in the Bureau as
Document No. 2010-094410 on July 6, 2010.  CSF ¶ 3; Hoffman Decl.
¶ 4; CSF Ex. C.  The recorded document suggests the assignment
may have taken place on June 14, 2010.  See CSF Ex. C.

story, four-bedroom, three-bathroom home on the Property.  CSF
Ex. G at 13, 18.  According to Plaintiff Dean Krakauer,
Plaintiffs originally intended the Property to be their primary
residence, but later decided not to move into the completed house
on the Property.  Id. at 10, 13.  The Property remained vacant
for one year following completion, at which point Plaintiffs
began renting the Property.  Id. at 13-14.

From August 2008 through April 2009, Plaintiffs made
scheduled payments (many of which were late) under the Note and
Mortgage.  CSF ¶ 7; CSF Ex. D, Ex. G at 12-13.  Plaintiffs
thereafter stopped making payments.  CSF ¶ 7; Hoffman Decl. ¶ 6;
CSF Ex. D, Ex. G at 12-13.  Consequently, on September 10, 2009,
Defendant OneWest recorded in the Bureau a "Notice of Mortgagee's
Intention to Foreclose Under Power of Sale."  CSF ¶ 8; Hoffman
Decl. ¶ 7; CSF Ex. E.[6/]  Plaintiffs initiated the instant lawsuit

---

[6/] As a result of Plaintiffs' failure to cure the default,
Defendants accelerated the loan and declared the entire principal
balance due under the Note and secured by the Mortgage, together
with interest, advances, and all other charges, immediately due
and payable, which Defendants assert include:

| | |
|---|---|
| Principal | $543,421.88 |
| Interest (03/01/2008- | |
| 07/01/10) | $ 64,050.56 |
| Late Fees | $  3,651.09 |
| Paid FC Fees and Costs | $  3,206.68 |
| Escrow Balance Due | $ 12,329.35 |
| Recoverable Corp. | |
| Advances | $  9,614.59 |
| **TOTAL DUE** | **$636,274.15** |

(continued...)

5

on October 27, 2009, to prevent Defendants' non-judicial
foreclosure sale, which had been scheduled for October 30, 2009.
CSF ¶ 11; FAC ¶¶ 7-8.

Beginning in June 2010, Plaintiffs initiated the first
of two "Administrative Process Remedies" in which, among other
things, Plaintiffs offered to settle with Defendants for
$749,000[7/] so long as Defendants first sent the original Note to
a purported third-party escrow agent.  See Opp'n 1 at 6-8; Opp'n
1 Exs. H-P; Opp'n 2 Exs. Q-S.  After Defendants did not accept
this offer and failed to comply with Plaintiffs' subsequent
"Presentment Letter," which demanded to see the original Note,
Plaintiffs claimed they were "entitled to performance and
stipulated damages" of $2,184,000.  See Opp'n 2 Exs. Q-V.

---

[6/](...continued)
CSF ¶ 10; Hoffman Decl. ¶ 7; FAC ¶ 12.  The Court notes that
prior to the hearing confirming the sale of the Property,
Defendants must provide further evidence regarding the amounts
claimed.

[7/] Plaintiffs' opposition memorandum states that in their
"Administrative Process," Plaintiffs "had full funds of $740,000
. . . waiting over 42 days for Defendants to collect through a
third party notary public to settle account to exchange for proof
of Defendants claim on Plaintiffs.  The funds included all fees
or costs, taxes, insurance and attorney costs to exchange with
Defendants when the Defendants brought their proof of claim
against Plaintiffs."  Opp'n 1 at 7 (grammatical errors in
original).  Plaintiffs' exhibits state that $749,000 was held in
escrow to settle with Defendants.  Opp'n 1 Exs. H-J, M, O.

## LEGAL STANDARDS

**A.    Summary Judgment Standard**

The purpose of summary judgment is to identify and
dispose of factually unsupported claims and defenses.  See
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary
judgment is therefore appropriate if the "pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  "A fact is 'material' when, under the
governing substantive law, it could affect the outcome of the
case.  A 'genuine issue' of material fact arises if 'the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust &
Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (citation
omitted).[8/]  Conversely, where the evidence could not lead a
rational trier of fact to find for the nonmoving party, no
genuine issue exists for trial.  See Matsushita Elec. Indus. Co.,
Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Only
admissible evidence may be considered in deciding a motion for
summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d

---

[8/] Disputes as to immaterial issues of fact do "not preclude
summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804
F.2d 1472, 1483 (9th Cir. 1986).

975, 988 (9th Cir. 2006).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323; <u>Miller</u>, 454 F.3d at 987.  The moving party may do so with affirmative evidence or by "'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 325.[9] Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. <u>See</u> <u>id.</u> at 323; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).[10] The nonmoving party must instead set forth "significant probative evidence" in support of its position. <u>T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

---

[9] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. <u>Miller</u>, 454 F.3d at 987.  When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party. <u>Id.</u>

[10] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see also</u> <u>T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987).

Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  See Celotex, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See T.W. Elec. Serv., 809 F.2d at 630–31.[11/]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  Anderson, 477 U.S. at 250–51.

## B.   Special Considerations for Pro Se Litigants

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987).  When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39-40 (9th Cir. 1966). However, "a pro se litigant is not excused from knowing the most basic pleading requirements."  American Ass'n of Naturopathic

---

[11/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  Anderson, 477 U.S. at 249; Bator v. Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000)
(citations omitted).  Moreover, "[p]ro se litigants must follow
the same rules of procedure that govern other litigants."  King
v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

### DISCUSSION

Plaintiffs' FAC asserts five counts against Defendants:
"Unfair Trade Practices Involving Non Compliance" (Count I),
"Failure t[o] Give 3 Day Cooling Period" (Count II), "Failure to
Give Conspicuous Writings" (Count III), "Unfair and Deceptive
Acts and Practices" in violation of Hawai'i Revised Statutes
("H.R.S.") Ch. 480 (Count IV), and "Unfair and Deceptive Acts and
Practices" in violation of the Uniform Commercial Code ("UCC")
(Count V).  Defendants move for summary judgment as to each of
these counts, and the Court will address each count in turn.  The
Court will then address Defendants' motion for summary judgment
as to their Counterclaim, which seeks foreclosure of the Mortgage
and sale of the Property.

**I.   Defendants' Motion for Summary Judgment as to Plaintiffs'
     FAC**

**A.   Count I - "Unfair Trade Practices Involving Non
         Compliance Under 15 USC Section[] 1802, et seq."**

Count I alleges that:

Full disclosure of the alleged executed, original,
unaltered, wet blue ink paper of the Note and Mortgage
documents were not given to Plaintiffs by Defendants
IndyMac, OneWest and/or Doe Defendants, at or after
closing and/or completion of the alleged executed,

10

> original, unaltered, wet blue ink paper of the Note and
> Mortgage transaction had taken place and or after
> Plaintiffs had purported to sign the alleged executed,
> original, unaltered, wet blue ink paper of the Note and
> Mortgage.

FAC ¶ 20.  This count further alleges that Defendants' "failure to disclose constitutes a false representation of the settlement agreement of the alleged executed, original, unaltered, wet blue ink paper of the Note and Mortgage, in violation of Federal and State laws of the State of Hawaii."  Id. ¶ 21.

Plaintiffs cite 15 U.S.C. § 1802 et. seq. as the basis for Count I.  FAC at 5.  As Defendants argue, however, "this section is found in the United States Code chapter on Newspaper Preservation," and Plaintiffs do not explain how this section applies to Plaintiffs' loan transaction.  Motion at 7 at n.2; See 15 U.S.C. § 1802.  Moreover, Plaintiffs' opposition memoranda offer no response to Defendants' observation that Count I is based on an inapposite statute.  Because the Court need not divine the ground for Plaintiffs' claim, Defendants are entitled to summary judgment as to Count I.[12/]

### B.   Counts II and III - Truth in Lending Act ("TILA") Violations

Respectively, Counts II and III allege that Defendants violated TILA, 15 U.S.C. § 1601 et seq., and its implementing

_____

[12/] Even if the Court were to assume that Plaintiffs intended to base Count I on 15 U.S.C. § 1602 et seq., which refers to the Truth in Lending Act, Count I would be time-barred for the reasons discussed in Section I.B, infra.

regulations by failing to give Plaintiffs (1) notice of their three-day right to rescind and (2) "conspicuous writings." FAC ¶¶ 24-33.

The purpose of TILA is to assure a meaningful disclosure of credit terms so that consumers can understand more readily various available terms and avoid the uninformed use of credit. See 15 U.S.C. § 1601(a). TILA requires the lender to disclose to borrowers specific information, including providing the borrower notice of his or her right to rescind a transaction. See, e.g., 15 U.S.C. §§ 1635, 1638. Regulation Z, 12 C.F.R. Part 226, is issued by the Board of Governors of the Federal Reserve System to implement TILA. See 12 C.F.R. § 226.1(a).

TILA provides borrowers two remedies for disclosure violations: (1) rescission, 15 U.S.C. § 1635; and (2) damages, 15 U.S.C. § 1640. Plaintiffs appear to allege both, so the Court will address each remedy in turn.

### 1. Rescission

In credit transactions in which a security interest in a consumer's principal dwelling is retained, TILA gives a consumer three days in which to rescind the transaction. 15 U.S.C. § 1635(a). If a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was

consummated or upon sale of the property, whichever occurs first. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 703-05 (9th Cir. 1986).

Here, Plaintiffs entered into the loan transaction on March 31, 2006.  CSF ¶¶ 1-2; Hoffman Decl. ¶¶ 2-3; Motion Exs. A, B, F.  Consequently, the statute of limitations for Plaintiffs' TILA claims for rescission expired on March 31, 2009.  Because Plaintiffs did not initiate the instant lawsuit until October 27, 2009, their TILA claims for rescission are barred by the statute of limitations.[13]

Although Plaintiffs do not address the issue, the Court notes that neither Defendants' answer to the Complaint nor their answer to the FAC explicitly raises a statute of limitations defense.  Instead, these answers state, inter alia, that the Complaint and FAC "fail[] to state a claim upon which relief can be granted."  Doc. Nos. 5, 45.  A statute of limitations is an affirmative defense, and should be raised in the first responsive pleading in order to avoid waiver under Fed. R. Civ. P. 8(c).

---

[13] Plaintiffs' opposition memoranda do not argue that Plaintiffs are entitled to equitable tolling, which does not apply to rescission claims under TILA in any event.  See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411-13 (1998).  Because Plaintiffs' rescission claims are time-barred, the Court need not address Defendants' alternative arguments that the claims fail because the Property is not Plaintiffs' "principal dwelling" and "Plaintiffs' loan was a construction loan and therefore exempt from the right of rescission."  Motion at 12-13.

See <u>United States Postal Serv. v. American Postal Workers Union</u>, 893 F.2d 1117, 1122 (9th Cir. 1990).  "In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment."  <u>Camarillo v. McCarthy</u>, 998 F.2d 638, 639 (9th Cir. 1993); <u>see also</u> <u>Brinkley v. Harbour Recreation Club</u>, 180 F.3d 598, 611-13 (4th Cir. 1999) ("[A]bsent unfair surprise or prejudice to the plaintiff, a defendant's affirmative defense is not waived when it is first raised in a pre-trial dispositive motion."), <u>overruled on other grounds by Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003).

The Court finds that Defendants have not waived their statute of limitations defense.  First, Plaintiffs have not been prejudiced because the motion for summary judgment was filed within two weeks of the answer to the FAC and provided Plaintiffs with sufficient notice of the limitations issue.  <u>See</u> <u>McCaskill v. First Franklin Financial Corp.</u>, 4:06CV1337-DJS, 2007 WL 1098490, at *1-2 (E.D. Mo. Apr. 12, 2007) (finding that a TILA limitations defense was not waived because a motion for judgment on the pleadings, which raised the defense for the first time, was filed within two months of answers that contained failure to state a claim defenses); <u>In re Chabot</u>, 369 B.R. 1, 12-14 (Bankr. D. Mont. 2007) (finding that a TILA limitations defense was not waived because it was raised in a motion for summary judgment and the plaintiff "had the opportunity to respond and failed to argue

14

or show any prejudice"), adopted by CV 07-122-M-DWM, 2007 WL
3477081, at *1 (D. Mont. Nov. 13, 2007).  Second, Defendants'
statute of limitations defense raises no disputed issues of fact.
See Hill v. Chase Bank USA, N.A., 2:07-CV-82 RM, 2010 WL 107192,
at *7 (N.D. Ind. Jan. 6, 2010) (finding that a TILA limitations
defense was not waived because "under Rule 8(c), the court may
dismiss a claim under Fed. R. Civ. P. 12(b)(6) if it is
indisputably time-barred"); Union of Flight Attendants v. Air
Micronesia, Inc., 684 F. Supp. 1520, 1530 (D. Haw. 1988) (finding
that a statue of limitations defense was not waived because it
raised no disputed issues of fact) (citing Scott v. Kuhlmann, 746
F.2d 1377, 1378 (9th Cir. 1984) and 5 C. Wright & A. Miller,
Federal Practice and Procedure, § 1277, at 79).

    **2.  Statutory Damages**

        TILA also permits claims for damages.  15 U.S.C.
§ 1640(a).  Only creditors, and in some instances assignees, are
subject to civil liability for damages under TILA.  See 15 U.S.C.
§ 1640(a).[14/]  Specifically, assignees may be held liable for

_____

    [14/] TILA defines a creditor as:

        [A] person who both (1) regularly extends, whether in
        connection with loans, sales of property or services,
        or otherwise, consumer credit which is payable by
        agreement in more than four installments or for which
        the payment of a finance charge is or may be required,
        and (2) is the person to whom the debt arising from the
        consumer credit transaction is initially payable on the
        face of the evidence of indebtedness . . . .
                                        (continued...)

damages if the disclosure violations made by the original lender are "apparent on the face" of the disclosure documents.  15 U.S.C. § 1641.[15/]

TILA requires that borrowers bring their claims for damages "within one year from the date of the occurrence of the violation," unless the claim is asserted "as a matter of defense by recoupment or set-off."  15 U.S.C. § 1640(e).  The Ninth Circuit has clarified that this period runs "from the date of consummation" of the transaction, which generally is defined as the date on which the money is loaned to the debtor.  King v. California, 784 F.2d 910, 915 (9th Cir. 1986).

Courts, however, may extend the period if the one-year rule would be unjust or would frustrate TILA's purpose.  Id.  For example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of his or her TILA claim, the court may toll the statute of limitations.  Id.; but see Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902-03 (9th Cir. 2003) (refusing to toll the statute of limitations on a TILA claim because the plaintiff was in full possession of all loan

_____

[14/](...continued)
15 U.S.C. § 1602(f).

[15/] 15 U.S.C. § 1641(a) states that "[a]ny civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement."

documents and did not allege any concealment of loan documents or any other action that would have prevented discovery of the TILA violations); Blanco v. Am. Home Mortg. Serv., Inc., No. CIV. 2:09-578 WBS DAD, 2009 WL 4674904, at *2-3 (E.D. Cal. Dec. 4, 2009) (same).

Because the FAC alleges disclosure violations occurring in March of 2006, Plaintiffs' claims for damages under TILA are time-barred unless the statute of limitations is equitably tolled.

Plaintiffs' opposition memoranda do not argue that Plaintiffs are entitled to equitable tolling. Further, it would not be appropriate to toll the statute of limitations here because Plaintiffs have not come forward with any evidence as to why they did not have an opportunity to discover the alleged nondisclosures or deceptive and unfair business practices when they occurred. See Hubbard v. Fidelity Federal Bank, 91 F.3d 75, 79 (9th Cir. 1996) (finding that the plaintiff was not entitled to equitable tolling because "nothing prevented [the plaintiff] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements"); see also Abeel v. Summit Lending Solutions, Inc., No. 09-CV-1892 JM (NLS), 2010 WL 1445179, *3 (S.D. Cal. Apr. 9, 2010) (granting summary judgment as to the plaintiffs' statutory damages claim under TILA because they did not "come forward with evidence to

show any basis for equitable tolling"); Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *3-4 (D. Ariz. Sep. 24, 2009) (holding that equitable tolling was not appropriate where the plaintiffs simply alleged that the defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure").  Accordingly, Plaintiffs' claims for damages under TILA are untimely.

### C.    Count IV - "Unfair and Deceptive Acts and Practices in violation of Chapter 480, Hawaii Revised Statutes"

Count IV alleges that Defendants have violated H.R.S. §§ 480-2 and 480-13.  FAC ¶¶ 34-38.

The Hawai'i Unfair and Deceptive Trade Practices Act ("UDAP") § 480-13 states that "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [H.R.S. ch. 480] . . . [m]ay sue for damages sustained by the person," including treble damages, and "[m]ay bring proceedings to enjoin the unlawful practices."  H.R.S. §§ 480-13(a)(1),(2).[16]  There are "three elements essential to recovery under H.R.S. § 480-13: (1) a violation of H.R.S. chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages." Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Hawai'i

---

[16]  Apart from affording damages and injunctive relief, H.R.S. ch. 480 also declares that "[a]ny contract or agreement in violation of [H.R.S. ch. 480] is void and is not enforceable at law or in equity."  H.R.S. § 480-12.

77, 113-14, 148 P.3d 1179, 1215-16 (2006) (footnote omitted).

H.R.S. § 480-2 provides, in relevant part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." H.R.S. § 480-2(a). In interpreting H.R.S. § 480-2, Hawai'i courts have held that "'[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Rosa v. Johnston, 3 Haw. App. 420, 427, 651 P.2d 1228, 1234 (1982) (citation omitted). A deceptive practice is defined as "an act causing, as a natural and probable result, a person to do that which he would not otherwise do." Eastern Star, Inc. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 133, 712 P.2d 1148 (1985). "However, . . . actual deception need not be shown; the capacity to deceive is sufficient." Id.

The Court finds that Defendants are entitled to summary judgment as to Count IV because Plaintiffs have submitted no evidence to support their UDAP claim. See Valdez v. Flexpoint Funding Corp., Civ. No. 09-00296 ACK-BMK, 2010 WL 3001922, at *10-13 (D. Haw. July 30, 2010) (granting summary judgment in favor of defendants because plaintiffs "c[ame] forward with no admissible evidence to support their UDAP claim"). Indeed, as Defendants point out, "Plaintiffs have been given multiple opportunities to explain the basis for their claim[] and have

19

failed to do so."  Motion at 8.

First, the FAC provides only conclusory allegations regarding the unfair or deceptive conduct attributable to Defendants.  For example, the FAC alleges:

> "The alleged . . . Note and Mortgage and the actions taken by [Defendants] contain unfair trade practices and predatory lending practices."  FAC ¶ 7.

> "[Defendants] negligently and/or intentionally failed and/or refused to provide disclosures that would indicate to Plaintiffs that the adhesion contract entered into was void, illegal and/or otherwise in violation of Federal Law, UCC Law and/or State Law." FAC ¶ 10.

> "Full disclosure of the alleged . . . Note and Mortgage documents were [sic] not given to Plaintiffs by [Defendants] at or after closing and/or completion of the alleged . . . transaction had taken place and or after Plaintiffs had purported to sign the alleged . . . Note and Mortgage."  FAC ¶ 20.

> "[Defendants] failed to give Plaintiffs all the facts about the allege[d] loan and adhesion contract that was entered into . . . ."  FAC ¶ 25.

Second, in response to an interrogatory seeking "any and all facts which support" the Complaint's UDAP count (which is essentially the same as the FAC's UDAP count), Plaintiffs stated only that "[t]he information given was misleading and incomplete. Full disclosure was not made to [P]laintiffs."  CSF Ex. L at 13. Third, Plaintiff Dean Krakauer cited no facts supporting the UDAP count when asked to do so at his deposition.  See CSF Ex. G. at 25; see generally id. at 21-25 (providing only conclusory and generalized statements to support the Complaint and relying on

Defendants' alleged failure to produce the original Note).

Finally, Plaintiffs' opposition memoranda identify no evidence to support the UDAP count.[17]

In short, because Plaintiffs have not set forth "significant and probative evidence" in support of their position, Plaintiffs' UDAP claim fails as a matter of law. See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987); Valdez, 2010 WL 3001922 at *10-13.[18]

**D.    Count V - "Unfair and Deceptive Acts and Practices in Violation of UCC 1-304, 3-302.c, 3-309, 8-102.17, 8-105, 8-106, 9-203"**

Count V alleges that:

> Full disclosure was not given by [Defendants] that
> Plaintiffs 1) would not be receiving a loan, 2) that
> lenders are prohibited by Federal law from loaning
> their own money, 3) that the allege[d] Note and
> Mortgage was being converted over to a Security

---

[17] Plaintiffs' opposition to summary judgment argues that Defendants lack standing to assert their claim for foreclosure. Opp'n 1 at 1-6.  Likewise, Plaintiffs contend Defendants wrongfully pursued foreclosure without having recorded the Mortgage's assignment to Defendants.  Plaintiffs do not, however, argue that this conduct supports Plaintiffs' UDAP claim. Moreover, for the reasons discussed in Section II, infra, that Defendants pursued foreclosure prior to recording the Mortgage's assignment does not support a UDAP claim.

[18] Because Plaintiffs have not submitted evidence supporting Count IV, the Court need not address Defendants' arguments that this count fails because (1) the TILA counts fail and (2) Defendants as a matter of law cannot be held responsible for the actions of Plaintiffs' mortgage broker.  Motion at 14-16.  The Court notes, however, that Plaintiff Dean Krakauer's equivocal suggestion that he was "rushed" by his mortgage broker is insufficient to avoid summary judgment as to Count IV.  See CSF Ex. G at 9-10.

Instrument that would be executed and cashed, 4) that unjust enrichment would be enjoyed that could be as much as 30 times the alleged loan amount 5) that [] Defendants are prohibited from altering Security Documents and that value must be given to enforce a security instrument.

FAC ¶ 40.  According to Count V, such conduct constitutes unfair and deceptive acts and practices in violation of the UCC.  FAC ¶¶ 39-42.

The Court agrees with Defendants that this claim is unintelligible.  Motion at 16.  Count V cites myriad UCC provisions, but neither the FAC nor Plaintiffs' opposition memoranda explain how Defendants' alleged conduct violated any of these provisions.[19/]  Moreover, even if the Court were to assume that the conduct alleged in paragraph 40 of the FAC would violate

---

[19/] UCC 1-304 provides that "[e]very contract or duty within [the UCC] imposes an obligation of good faith in its performance and enforcement."  UCC 3-302(c) provides that in certain situations, a purchaser of an instrument can acquire no better rights than the prior holder.  But see UCC 3-302 cmt. 5 ("Under the governing federal law, the FDIC . . . [is] given holder in due course status and that status is also acquired by [its] assignees under the shelter doctrine.").  UCC 3-309 relates to the enforcement of an instrument by a person not in possession of the instrument.  UCC 8-102(17) defines an "uncertificated security" as "a security that is not represented by a certificate."  UCC 8-105 defines notice of an adverse claim; other UCC sections provide that persons who acquire security instruments are protected against adverse claims only if the acquisitions were without notice of the claims.  UCC 8-105 cmt. 1.  UCC 8-106 relates to "control" of a certificated security, which "means that the purchaser has taken whatever steps are necessary . . . to place itself in a position where it can have the securities sold, without further action by the owner."  UCC 8-106 cmt. 1.  Finally, UCC 9-203 relates to the attachment and enforceability of security interests.

the UCC, Plaintiffs have not set forth "significant and probative evidence" to support their allegations of misconduct.  See T.W. Elec. Serv., 809 F.2d at 630.

For example, Plaintiffs repeatedly allege they did not receive a loan – and that Defendants did not disclose this to Plaintiffs – yet Plaintiff Dean Krakauer testified that he received about $540,000 toward the construction of the house built on the Property as a result of his signing the Note and Mortgage.  See CSF Ex. G at 11-13.  Moreover, Dean Krakauer testified that he made payments on the "alleged" loan, and OneWest's records show that Plaintiffs made payments pursuant to the Note and Mortgage from August 2008 through April 2009.  See id. at 12-16; CSF Ex. D.  Accordingly, Plaintiffs' claims that they did not receive a loan are meritless.

Likewise, Plaintiffs fail to provide any support for – let alone any explanation of – their allegations that Defendants were required to, but failed to, disclose that: "lenders are prohibited by Federal law from loaning their own money"; the "Note and Mortgage was being converted over to a Security Instrument that would be executed and cashed"; "unjust enrichment would be enjoyed that could be as much as 30 times the alleged loan amount"; and "Defendants are prohibited from altering Security Documents and that value must be given to enforce a security instrument."  FAC ¶ 40.  Finally, as discussed in

23

Section II, _infra_, Plaintiffs also fail to show there are genuine issues of material fact as to whether Defendants possess the original Note, Deutsche Bank is the actual holder of the Note and Mortgage, and Plaintiffs, rather than Defendants, are "the true creditors." _See_ Opp'n 1 at 2-4.

Because Plaintiffs have not submitted "significant and probative evidence" to support their UCC claim, Defendants are entitled to summary judgment as to Count V.

## II. Defendants' Motion for Summary Judgment as to Their Counterclaim for Foreclosure

In general, there is no federal foreclosure law; rather, state law serves as the law of decision in foreclosure actions. _See_ _Whitehead v. Derwinski_, 904 F.2d 1362, 1371 (9th Cir. 1990), _overruled on other grounds by_, _Carter v. Derwinski_, 987 F.2d 611 (9th Cir. 1993); _see also_ _In Re Morris_, 204 B.R. 783, 785 n.2 (Bankr. N.D. Ala. 1996) ("[T]here is no federal foreclosure law . . . .").

Under Hawai'i law, a mortgage foreclosure decree is appropriate if four material facts have been established: (1) the existence of a promissory note, mortgage, or other debt agreement; (2) the terms of the promissory note, mortgage, or other debt agreement; (3) default by the borrower under the terms of the promissory note, mortgage, or other debt agreement; and (4) the giving of sufficient notice of default and that payment of the debt is due and owing. _See_ _IndyMac Bank v. Miguel_, 117

24

Hawai'i 506, 520, 184 P.3d 821, 835 (App. 2008); <u>Bank of Honolulu, N.A. v. Anderson</u>, 3 Haw. App. 545, 551, 654 P.2d 1370, 1375 (1982); <u>see also</u> <u>McCarty v. GCP Mgmt., LLC</u>, Civ. No. 10-00133 JMS/KSC, 2010 WL 4812763, at *8 (D. Haw. Nov. 17, 2010). Further, to be entitled to a decree of foreclosure, the mortgagee is required to prove the mortgagor's default, but need not show the exact amount owed until after the confirmation of the foreclosure sale.  <u>Anderson</u>, 3 Haw. App. at 550, 654 P.2d at 1375.

The Court will first address Plaintiffs' arguments why Defendants are not entitled to summary judgment as to their Counterclaim.  Next, the Court will review the evidence produced by Defendants to determine if it is sufficient to establish that Defendants are entitled to summary judgment as to the Counterclaim.

### A.    Plaintiffs' Opposition to the Counterclaim

Plaintiffs' opposition to the Counterclaim asserts various arguments, none of which the Court finds persuasive. Plaintiffs' primary contention is that Defendants initially lacked standing to pursue a non-judicial foreclosure sale and now lack standing to seek a decree of foreclosure.  Opp'n 1 at 1-6. Plaintiffs' contention is based on Defendants' alleged (1) non-possession of the original Note and Mortgage, (2) failure to produce the original Note and Mortgage, and (3) failure to record

25

the assignment of the Mortgage until July 6, 2010 (if at all).

Plaintiffs' first two allegations are easily disposed of.  First, there are no genuine issues of material fact as to whether Defendants possess the original Note and Mortgage.  See CSF ¶ 18; Stone Decl. ¶ 12; Motion at 10 n.5.[20/]  Second, this Court and other district courts have rejected "show me the note" arguments like Plaintiffs'.  Angel v. BAC Home Loan Servicing, LP, Civ. No. 10-00240 HG-LEK, 2010 WL 4386775, at *9-10 (D. Haw. Oct. 26, 2010); see also Brenner v. Indymac Bank, F.S.B., Civ. No. 10-00113 SOM/BMK, 2010 WL 4666043, at *7 (D. Haw. Nov. 9, 2010) (explaining that "[n]o law requires a lender to show a borrower an 'original' mortgage" prior to initiating foreclosure); Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009) (discussing why courts routinely reject "show me the note" arguments to avoid foreclosure).

The Court is also unpersuaded by Plaintiffs' argument

---

[20/] In a Florida foreclosure action, Erica A. Johnson-Seck, who executed the assignment of the Note and Mortgage at issue here, testified in a deposition that she had executed a mortgage assignment from IndyMac to OneWest and then from OneWest to Deutsche Bank.  See Opp'n 1 Exs. CA, D, D1.  Citing this testimony, Plaintiffs claim that Deutsche Bank may be the holder of their Note and Mortgage.  Opp'n 1 at 3.  This argument is meritless.  There is no evidence that Deutsche Bank has anything to do with Plaintiffs' Note and Mortgage.  Moreover, that a Florida case involved a loan that was assigned from IndyMac to OneWest and from OneWest to Deutsche Bank in no way indicates that Plaintiffs' Note and Mortgage now belong to Deutsche Bank.

26

that Defendants lack standing due to their failure to record the Mortgage's assignment until July 6, 2010.  Granted, Defendant OneWest recorded a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale" on September 10, 2009 and filed the instant Counterclaim on December 28, 2009, but did not record the Mortgage's assignment until July 6, 2010.[21/]  CSF ¶ 3; Hoffman Decl. ¶ 4; Motion Exs. C, E.  The Court finds, however, that under Hawai'i law, this does not deprive Defendants of standing to pursue their Counterclaim for foreclosure.

In IndyMac Bank v. Miguel, IndyMac filed a claim for foreclosure on April 4, 2003, even though it was not assigned an interest in the note and mortgage at issue until June 6, 2003, and this assignment was not recorded until July 15, 2003.  117 Hawai'i at 511, 184 P.3d at 826.  On appeal, the appellants argued that "by initiating the lawsuit prior to recordation . . . IndyMac effectively had no interest at the onset of th[e] litigation."  Id. at 512, 184 P.3d at 827.  Following a lengthy

---

[21/] Plaintiffs fail to demonstrate a genuine issue of material fact as to whether Defendants recorded the assignment of the Mortgage on July 6, 2010.  See CSF ¶ 3; Hoffman Decl. ¶ 4; CSF Ex. C; Opp'n 1 at 2; Opp'n 1 Ex. CB.  In addition to the other uncontroverted evidence of Defendants' July 6, 2010 assignment, the Court takes judicial notice that this assignment is listed in the Bureau's online database of official public records.  See Fed R. Evid. 201 (providing that courts may sua sponte take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); Bureau of Conveyances – Official Public Records, https://boc.ehawaii.gov/docsearch/documentNumberSearch.html (last visited Dec. 13, 2010).

analysis, the Hawai'i Intermediate Court of Appeals rejected this argument.  Id. at 513-17, 184 P.3d at 828-32.  The Miquel court reasoned as follows:

> To hold that the circuit court lacked jurisdiction would be to exalt form over substance, to the extent that IndyMac could immediately re-initiate the same cause of action and follow the path the litigation has taken so far, with the same result.  Since IndyMac perfected its interest within a few months of initiating the suit and Appellants did not previously challenge IndyMac's standing on this basis, the post-filing cure to standing does not affect the rights, liabilities, claims or defenses of Appellants in any meaningful way.
>
> Allowing this retroactive cure to standing does not appear to raise the threat of opening the courts to additional litigation, as it does not allow suits by those who cannot show, prior to the entry of judgment, their interest in the litigation.
>
> Lastly, to do otherwise would cause needless expense and delay.  As in the present case, where a dispute has already arrived at a final judgment and the issue has been raised for the first time on appeal, dismissing the suit without prejudice does nothing to change the resolution of the underlying dispute other than to compel the parties to re-file and relitigate a matter, potentially affording the non-prevailing litigant another bite at the apple and certainly increasing the time and resources necessary to bring the matter to a final conclusion.  We therefore conclude that by perfecting its interest in Appellants' Mortgage prior to the order granting summary judgment and entry of the decree of foreclosure in IndyMac's favor, IndyMac effectively cured its lack of standing at the initiation of this lawsuit.

Id. at 517, 184 P.3d at 832.

Applying Miquel to the case at bar, the Court concludes that Defendants have standing even though they failed to record the Mortgage's assignment before initiating non-judicial foreclosure proceedings or seeking a decree of foreclosure in

28

this Court.  To hold otherwise "would be to exalt form over
substance" because Defendants could re-initiate their claim for
foreclosure and, for the reasons outlined below, would thereby be
entitled to the relief they now request.  Id.  Moreover, finding
that Defendants lack standing would "cause needless expense and
delay."  Id.[22/]  Accordingly, "by perfecting [their] interest in
[Plaintiffs'] Mortgage prior to" this order, Defendants
"effectively cured [their] lack of standing at the initiation of
this lawsuit."  Id.[23/]

The Court is also unpersuaded by Plaintiffs' remaining
arguments.  First, Plaintiffs contend that Defendants violated
"the doctrine of clean hands and maxims of law" by collecting
monthly payments and pursuing foreclosure before recording the
Mortgage's assignment.  Opp'n 1 at 4-6.  In the Court's view,

_____

[22/] Although the appellants in Miquel raised the issue of
standing for the first time on appeal, this Court finds Miquel's
holding equally applicable here, where Plaintiffs have objected
to standing at the trial court level.  Indeed, IndyMac could not
have turned on the appellants' failure to object to standing
prior to appeal because "'standing is a jurisdictional issue that
may be addressed at any stage of a case.'"  Kaho'ohanohano v.
State, 114 Hawai'i 302, 324, 162 P.3d 696, 718 (2007) (citation
omitted).

[23/] Because Defendants "effectively cured" their initial lack
of standing by recording the Mortgage's assignment on July 6,
2010, the Court does not need to determine when exactly IndyMac
assigned its interest in the Mortgage to OneWest.  See supra note
3.  Indeed, in Miquel, IndyMac filed a complaint for foreclosure
two months before it was assigned any interest in the note and
mortgage at issue.  See Miquel, 117 Hawai'i at 511, 514, 184 P.3d
at 826, 829.

however, the holding in <u>Miguel</u> forecloses this argument.  Second, Plaintiffs argue that Defendants violated the March 19, 2009 Loan Sale Agreement by failing promptly to record the Mortgage's assignment and by initiating foreclosure before such recordation.  <u>See</u> Opp'n 1 at 4-5; Opp'n 1 Exs. E, EA, EB.  But even if the Court were to deem admissible the unauthenticated Loan Sale Agreement and assume it transferred the Note and Mortgage (as Plaintiffs appear to believe), Plaintiffs fail to show that Defendants violated the Loan Sale Agreement and, as a result, are precluded by law or by that agreement from obtaining a decree of foreclosure.  Third, Plaintiffs argue that because the Mortgage allows the "Lender" to invoke the power of sale, only IndyMac, the initial lender, had such authority.  Opp'n 1 at 6.  Plaintiffs' argument is meritless because there is no reason to believe the Mortgage and the rights accompanying it are non-transferrable.

Finally, Plaintiffs contend that "their Administrative Process Remedy . . . demonstrate[s] admittance by the Defendants that they have no standing and are foreclosing on fraud by their own acquiescence."  Opp'1 at 6-7; <u>see also</u> Opp'n 2 at 1-2; Opp'n 1 Exs. H-P; Opp'n 2 Exs. Q-V.  As OneWest informed Plaintiffs, however, such "Administrative Remedies" appear to have been adaptations of fraudulent "debt-elimination schemes" sometimes marketed on the internet.  Opp'n 1 Ex. K; <u>see United States v.</u>

Johnson, No. CR 05-0611 WHA, 2008 WL 205596, at *1 (N.D. Cal.
Jan. 24, 2008) (discussing a fraudulent "debt-elimination"
program in which "'presentment packets' [that] were thick and
full of 'gobbledygook'" were sent to lenders), aff'd, 610 F.3d
1138 (9th Cir. 2010).  Whatever their origin, Plaintiffs'
concocted measures to avoid foreclosure are insufficient to
preclude summary judgment as to Defendants' Counterclaim.  See
Brenner v. Indymac Bank, F.S.B., Civ. No. 10-00113 SOM/BMK, 2010
WL 4666043, at *7 (D. Haw. Nov. 9, 2010) (explaining that "[n]o
law requires a lender to show a borrower an 'original' mortgage"
prior to initiating foreclosure); Mansour v. Cal-Western
Reconveyance Corp., 618 F. Supp. 2d 1178, 1181 (D. Ariz. 2009)
(discussing why courts routinely reject "show me the note"
arguments to avoid foreclosure).

> **B.   Defendants' Evidence in Support of Their
>        Counterclaim**

Having concluded Plaintiffs' objections to the
Counterclaim lack merit, the Court will review the evidence
produced by Defendants to determine if it is sufficient to
establish that Defendants are entitled to summary judgment as to
the Counterclaim.  Upon review, the Court finds that Defendants
have produced evidence of all four of the required factors, and
therefore are entitled to judgment as a matter of law, a decree
of foreclosure, and, if necessary, a deficiency judgment.

First, there are no genuine issues of material fact as

to the existence and terms of the Note and Mortgage. In their motion for summary judgment, Defendants have come forward with evidence that on March 31, 2006, Plaintiffs executed the Note for $546,000. CSF ¶ 1; Hoffman Decl. ¶ 2; CSF Ex. A; see also CSF Ex. F, Ex. G at 7. To secure payment on the Note, Plaintiffs on the same day executed the Mortgage, which was recorded in the Bureau on April 7, 2006. CSF ¶¶ 2-3; Hoffman Decl. ¶¶ 3-4; Motion Exs. B-C. Because there is no genuine dispute regarding the existence or terms of the Note and Mortgage, Defendants have satisfied the first and second Anderson requirements. See Anderson, 3 Haw. App. at 550, 654 P.2d at 1375.[24/]

Second, there are no genuine issues of material fact as to whether Plaintiffs are in default and have received requisite notice of this default. Defendants have come forward with evidence that Plaintiffs stopped making scheduled payments under the Note and Mortgage in April 2009. CSF ¶ 7; Hoffman Decl. ¶ 6; CSF Ex. D, Ex. G at 15-16.[25/] Subsequently, written notice was

---

[24/] As discussed in Section I, supra, Plaintiffs' assertions that they did not receive a loan are uncorroborated and without merit. As a result, such assertions are insufficient to establish a genuine issue of material fact as to the existence or terms of the Note and Mortgage. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); T.W. Elec. Serv., 809 F.2d at 630.

[25/] Plaintiffs' uncorroborated assertion that certain documents will reveal that the Mortgage "is paid in full by Plaintiffs" is plainly insufficient to establish a genuine issue of material fact as to Plaintiffs' default. Opp'n 1 at 3; see
(continued...)

provided to Plaintiffs concerning this default and Defendant OneWest's "intention to accelerate the loan and to foreclose the Mortgage if the default was not cured."  Hoffman Decl. ¶ 7; see CSF ¶ 8; CSF Ex. E; Opp'n 1 at G2.  Moreover, Defendants' Counterclaim, which was filed on December 28, 2009, provided notice to Plaintiffs that payment under the Note and Mortgage is due and owing.  In opposition, Plaintiffs do not deny receiving notice that Defendants intended to accelerate the loan and foreclose the Mortgage.  Thus, the Court finds that Plaintiffs have been given sufficient notice.  See McCarty, 2010 WL 4812763 at *8 (finding that a counterclaim for foreclosure provided "sufficient notification that payment of the debt is due and owing") (citing Miquel, 117 Hawai'i at 520, 184 P.3d at 835). Further, "[d]espite notice, Plaintiffs failed, refused, and neglected to cure the default."  CSF ¶ 9; Hoffman Decl. ¶ 7; see CSF Ex. D (showing that Plaintiffs were still in default as of September 15, 2010).  Accordingly, there is no genuine dispute regarding Plaintiffs being in default or having received notice of such default, and Defendants have satisfied the third and fourth Anderson requirements.  See Anderson, 3 Haw. App. at 550, 654 P.2d at 1375.

---

[25]/(...continued)
Villiarimo, 281 F.3d at 1061; T.W. Elec. Serv., 809 F.2d at 630. Now was the time for Plaintiffs to have come forward with such documentation, yet they have failed to do so.

In sum, because Defendants have met all four requirements, and Plaintiffs have failed to "set forth specific facts showing that there is a genuine issue" of material fact, the Court finds that summary judgment as to the Counterclaim is appropriate.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Although Defendants assert that Plaintiffs now owe $636,274.15 under the Note, supra note 4, the Court need not determine the exact amount of interest and other charges owed at this point, as this issue will be addressed at the hearing confirming the sale of the Property.[26]  The Court notes, however, that Plaintiffs are permitted to cure their default with Defendants to prevent the foreclosure sale.  To do so, Plaintiffs must, prior to the foreclosure sale, pay the entire principal amount owed, together with any lawful interest and administrative charges thereupon.  See In re Kealia Beach Village, Inc., 18 B.R. 133 (D. Haw. Bankr. 1982); see also Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co., 89 Hawai'i 157, 164, 969 P.2d 1275, 1282 (1998).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants'

---

[26] Prior to the hearing confirming the sale of the Property, Defendants must provide further evidence regarding the interest, administrative fees, and other sums owed in order to demonstrate their entitlement to the amounts claimed.

motion for summary judgment.  Accordingly, Defendants are entitled to a decree of foreclosure on the Property and, if necessary, a deficiency judgment.  Within seven days of this Order, Defendants shall submit to the Court and to Plaintiffs the name and qualifications of a proposed foreclosure commissioner with experience in Hawai'i County.  If Plaintiffs object to Defendants' proposed commissioner, they may, within fourteen days of this Order, submit to the Court and to Defendants the name and qualifications of an alternative proposed commissioner.[27]

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, December 14, 2010.



Alan C. Kay
Sr. United States District Judge

Krakauer et al. v. Indymac Mortgage Services et al., Civ. No. 09-00518 ACK-BMK, Order Granting Defendants/Counterclaimants' Motion for Summary Judgment.

---

[27] In a separate order, the Court will make the final selection of an appropriate commissioner and provide the necessary directions regarding the foreclosure of Plaintiffs' Note and Mortgage.